Abraham N. Geller, J.
This is a motion by Manhattan and Bronx Surface Transit Operating Authority for a preliminary injunction directed against Transport Workers Union of America, Local 100 of said union, and named officers of these union organizations, to enjoin them from carrying on, continuing or lending support to any strike of plaintiff’s employees and for a direction that they shall forthwith instruct all their union members not to engage or participate in any such strike.
The City of New York acquired certain omnibus facilities from Fifth Avenue Coach Lines, Inc. and Surface Transit, Inc. In 1962 the city leased to plaintiff Authority, a subsidiary of the *1022 New York City Transit Authority, said omnibus facilities for the purpose of operation during a temporary period until they could be sold by the city or otherwise disposed of to public or private operation. These omnibus facilities carry more than 1,000,000 passengers each weekday. The Authority employs about 5,400 drivers and mechanics.
On January 1, 1966 these employees went on strike at the same time and in conjunction with the operating employees of all city transit facilities operated by the New York City Transit Authority. The defendant officers and unions in this case are the same as those enjoined on December 31, 1965 in the injunction action brought by the New York City Transit Authority on the ground that a strike by them is illegal and contrary to the policy of the State (New York City Tr. Auth. v. Quill, 48 Misc 2d 940).
Defendants urge in this case that there are distinguishing features with respect to these omnibus employees, which remove them from the category of “ public employees ” in the Condon-Wadlin Act and, therefore, from the prohibition contained therein against striking.
To place the subject in proper focus it should, perhaps, be noted that there is no question as to the recognition of the rights of employees in labor disputes and of the protective restrictions against the issuance of injunctions set forth in section 807 of the Labor Law. The only question is whether section 807 is applicable under these circumstances to these particular employees. It has been settled that “ public employees ” can and should be enjoined from striking and that the provisions of section 807 are not applicable to such employees.
There is, of course, the concomitant responsibility of the governmental agency employer to be fair in its treatment of such employees, since they have been deprived of the normal right of labor generally to strike. The present embittered controversy should indicate the immediate need for some specific legislation, providing remedial measures to facilitate protection of the-rights of such employees while penalizing any violations thereof.
Our responsibility on the present issue is to interpret and enforce the law as it applies to these employees. It is clear that, despite some distinction in the temporary aspect of this omnibus operation and the consequent lack of civil service status accorded to these employees, their right to strike is and should be no greater than the rights of their fellow employees of the city transit facilities operated by the New York City Transit Authority.
Since their employer is an Authority, in fact, a subsidiary com *1023 posed of the same members as the parent Authority, operated in all respects the same as the parent Authority and qualifying as a public benefit corporation, they come within the definition of a “ public employee ” in the Gondon-Wadlin Act. It is true that, because of the temporary operation of such omnibus lines planned by the city, the status of such employees was expressly excluded from the governing provisions of the Civil Service Law. But this does not detract from the application to them of the basic policy that employees of a governmental unit or public benefit corporation are public employees forbidden to strike. The city is the owner of the facilities leased to this Authority and operated by these employees; they are for all true purposes employees of the city and of its people.
In United States v. United Mine Workers of America (330 U. S. 258) the United States had taken possession of and was operating the major portion of the country’s bituminous coal mines. It was there contended that the preliminary injunction had been issued in violation of the Norris-La Guardia Act, the forerunner of our section 807. The Supreme Court of the United States held that the act did not affect the jurisdiction of the courts to issue injunctions when sought by the United States in a labor dispute with its own employees. Answering the contention urged that the mineworkers did not have the same status as regular government employees, the court said (pp. 285-286): 1 ‘ The question with which we are confronted is not whether the workers in the mines under Government seizure are ‘ employees ’ of the Federal Government for every purpose which might be conceived, but whether, for the purpose of this ease, the incidents of the relationship existing between the Government and the workers are those of governmental employer and employee.”
Here, also, the nature of the operation in the public interest of facilities owned by the Government compels the holding that a strike is illegal and must be enjoined. Moreover, there is no real difference as to wages, hours of employment, etc., between the position of these employees with relation to their employer and that of the transit workers with relation to the New York City Transit Authority; and their striking through the same union and union leaders at the same time and for the same purposes reasonably calls for the same disposition of the same issues.
This motion for a preliminary injunction and direction for instruction not to engage in or participate in the strike is therefore gran Led,