■ In the Matter of SCOTT HAZAN et al., Appellants, v ELIN M. HOWE, as Commissioner of the State of New York Office of Mental Retardation and Developmental Disabilities, et al., Respondents. [625 NYS2d 670] —Yesawich Jr., J. Appeal (transferred to this Court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Meehan, J.), entered May 7, 1993 in Rockland County, which dismissed petitioners' application, in a proceeding pursuant to CPLR

---

article 78, to review determinations of respondents approving a site for use as a community residence for mentally disabled persons.

At issue on this appeal is whether respondents adequately complied with the requirements of the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) prior to approving and funding the purchase and renovation of a house for operation as a group residence for eight mentally disabled individuals. The residence is situated on a 1.6-acre wooded lot at 29 Seymour Drive in the Town of Clarkstown, Rockland County, and is set back from the road—a cul-de-sac in a residential neighborhood—by a 400-foot long driveway. After respondent Commissioner of Mental Retardation and Developmental Disabilities overruled the Town's objections to the proposed use of the property (see, Mental Hygiene Law § 41.34 [c] [5]), petitioners, neighbors of the subject property, brought this proceeding to annul respondents' determinations approving the acquisition, financing and operation of this property as a residential facility and to obtain an appropriate injunction. Supreme Court found, inter alia, that the challenged action was properly classified as "type II", rendering SEQRA review unnecessary, and dismissed the petition on the merits. Petitioners appeal.

The primary purpose of SEQRA is to ensure that environmental concerns are considered and addressed at the earliest possible stage of governmental decision making (see, 6 NYCRR 617.1 [c]). Statutes and implementing regulations achieve this goal by requiring that an environmental impact statement (hereinafter EIS) be prepared (and reviewed by the decision maker) in connection with any proposed action that "may have a significant effect on the environment" (ECL 8-0109 [2]; see, Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 414-415). The Department of Environmental Conservation (hereinafter DEC) has determined that certain activities, designated as type II, do not, by their very nature, have the potential to affect the environment—unless they are carried out in particularly sensitive locations—in any way that might meet the statutory threshold for preparation of an EIS. No individualized assessment is required with respect to type II activities (see, 6 NYCRR 617.13 [a]).

The regulations also permit other agencies to compile their own lists of type II activities, as long as certain standards are met (see, 6 NYCRR 617.13 [b]), and respondent Office of Mental Retardation and Developmental Disabilities (herein-

after OMRDD) has done just that *(see,* 14 NYCRR 622.4). Respondents maintain, and Supreme Court found, that inasmuch as the project in dispute is not part of a larger project, and involves the renovation of an existing structure of less than 6,000 square feet located on less than five acres of land to house not more than 14 people, an activity expressly listed by OMRDD as a type II action *(see,* 14 NYCRR 622.4 [a] [4] [ii]), petitioners' SEQRA challenge is without merit. Petitioners assert that, because the property is located in an environmentally sensitive area, the project falls within an exception to the type II designation *(see,* 14 NYCRR 622.4 [a] [4] [ii] *[c]),* and that if the likely increase in traffic and change in neighborhood character had been given adequate consideration, the type II classification would have been rejected *(but cf., Matter of Hare v Molyneaux,* 182 AD2d 908, 909-910). They also contend that, even if the renovation was technically a type II action, respondents' failure to make an explicit finding in this respect, in itself, violated SEQRA.

We are unconvinced. Petitioners have not demonstrated that any portion of the site in question has been designated a wetlands, and hence environmentally sensitive, by DEC. While they have shown that some of the undeveloped land on the site might be considered by the Army Corps of Engineers to be wetlands, the Corps' letter in evidence is far from conclusive in this regard. More importantly, the project at issue does not involve any change to that portion of the property. Nor have petitioners demonstrated that the elementary school grounds which abut the subject parcel are "designated open space". And the fact that the school property is used by some of the neighbors for recreational purposes does not, without more, transform it into a "publicly owned or operated recreation area" within the meaning of the OMRDD regulations.

Unavailing also is petitioners' suggestion that OMRDD's determination must be annulled because the agency failed to make an explicit finding that the acquisition and renovation of the house at 29 Seymour Drive is a type II action. Notably, DEC's regulations implementing SEQRA declare that type II actions "do not require environmental impact statements *or any other determination or procedure"* under SEQRA (6 NYCRR 617.13 [a] [emphasis supplied]; *see also, West 97th-W. 98th Sts. Block Assn. v Volunteers of Am.,* 190 AD2d 303, 307-308). Although the regulations necessarily require that an agency make an initial determination of whether the action is "subject to SEQR[A]" (6 NYCRR 617.5 [a] [1]), if it is exempt, excluded or type II the agency has "no further responsibilities

under [SEQRA]" (6 NYCRR 617.5 [a] [1]; *see,* 6 NYCRR 617.3 [j]). There may be a need to document the rationale for this initial determination, in order to facilitate judicial review, when it is not manifestly clear that the activity involved meets the criteria defining a particular class of type II actions *(see, Matter of London v Art Commn.,* 190 AD2d 557, 559, *lv denied* 82 NY2d 652), and a more detailed preliminary inquiry may also be necessary when an administratively predetermined type II classification conflicts with "a competing environmental impact" *(Matter of Town of Bedford v White,* 155 Misc 2d 68, 71, *affd* 204 AD2d 557; *see also,* 14 NYCRR 622.4 [a] [2] [ii]). But neither of those circumstances is present here. To require an explicit, individualized assessment of every project, as petitioners would have it, would be to eliminate the benefit that emanates from the compilation of a type II list in the first place. In any event, where, as in this instance, the project involves no new construction, is limited to a single residential lot and does not directly impact any environmentally sensitive land, the level of analysis undertaken by OMRDD, as illustrated by the short-form environmental assessment form that was prepared, is clearly sufficient.

The other arguments advanced by petitioners do not warrant comment.

Mikoll, J. P., Mercure, Crew III and Peters, JJ., concur. Ordered that the judgment is affirmed, without costs.